**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Robinson, *LCSW*, | No. 05-01541-PHX-EHC |
| Plaintiff, | **ORDER** |
| vs. | |
| Debra Rinaudo, *Executive Director State of Arizona Board of Behavioral Health Examiners, et. al*, | |
| Defendants. | |

Before the Court is Defendants' Motion for Summary Judgment (Dkts. 67, 68). Plaintiff filed a response.[1] (Dkt. 73). Plaintiff also filed a Motion to Strike Portions of Defendant Rinaudo's Affidavits (Dkt. 77), and a Motion to Strike Portions of Mary M. Black Tim Martinson-Affidavits For Summary Judgment (Dkt. 78). For the reasons discussed herein, Defendants' Motion for Summary Judgment (Dkts. 67, 68) is granted, and Plaintiff's motions to strike (Dkts. 77, 78) are denied.

---

[1] Plaintiff is appearing *pro se*. The Ninth Circuit upholds a "policy of liberal construction in favor of pro se litigants." Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998). Litigants have a statutory right to self-representation in civil matters, see 28 U.S.C. § 1654, and are entitled to meaningful access to the courts. Rand, 154 F.3d at 957, citing Bounds v. Smith, 430 U.S. 817, 823, 97 S.Ct. 1491 (1977); Wolff v. McDonnell, 418 U.S. 539, 579, 94 S.Ct. 2963 (1974); Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747 (1969); Hatfield v. Bailleaux, 290 F.2d 632, 637 (9th Cir. 1961). Consequently, the Court tolerates informalities from civil pro se litigants like Plaintiff.

**I.    Background[2]**

This action stems from the decision of the State of Arizona Board of Behavioral Health Examiners (hereinafter "BBHE") to revoke Plaintiff's Clinical Social Work license because it concluded that Plaintiff was a threat to the public's health, welfare, and safety. (Dkt. 14; Dkt. 68; Dkt. 69, Defendants' Statement of Facts ("DSOF") ¶ 10). Defendant, Debra Renaudo, is the Executive Director of the BBHE. (DSOF ¶ 2). The BBHE regulates the behavioral health profession in Arizona. See A.R.S. §§ 32-3251, *et seq.*; A.A.C. R4-6-101, *et seq*. The other named State Defendants are either present or past members of the Board of Social Work Credentialing Committee (hereinafter "SWCC"). (DSOF ¶ 2).

**A.    The BBHE's Investigation**

In February of 2003, Plaintiff submitted an application for license renewal to the BBHE, disclosing that he had been involuntarily terminated from his position at ValueOptions, a social services company. (DSOF ¶ 3, Ex. B). This disclosure prompted the BBHE to open an investigation. (DSOF ¶ 4). Through its investigation, the BBHE learned that Plaintiff had failed to inform the BBHE that he had also been terminated from two other social service organizations and had resigned from a third. (DSOF ¶ 4). After his termination from ValueOptions, Plaintiff was hired by Arizona Youth Associates, but failed to disclose on his employment application that he had been terminated from ValueOptions. (DSOF ¶ 5). Thereafter, Plaintiff was terminated from Arizona Youth Associates. (DSOF ¶ 4). Following his termination from Arizona Youth Associates, Plaintiff submitted an employment application to Terros, Inc., for a position as a clinician, but did not disclose on his employment application that he had been terminated from either ValueOptions or Arizona

---

[2] Plaintiff objects to many of the facts underlying the BBHE's decision to revoke his license. Nonetheless, Plaintiff does not point to any facts in the record that contradict Defendants' presented evidence. As other courts have noted, it is not the task of the Court to scour the record in search of a genuine issues of triable fact. See Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996). The Court relies on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment. Keenan, 91 F.3d at 1279.

Youth Associates. (DSOF ¶ 6). Plaintiff then resigned from Terros, Inc. after his forensic drug test results were positive for marijuana. (DSOF ¶ 6). Plaintiff was subsequently hired by Black Family and Child Services as an independent contractor, but was terminated a few months later.[3] (DSOF ¶ 7).

The BBHE learned that the employers that had terminated Plaintiff did so for various reasons, including unprofessional and inappropriate behavior with clients, rude and confrontational behavior with coworkers, late submittal of paperwork, poor interpersonal and clinical abilities, and poor documentation skills. (DSOF ¶ 8). Plaintiff offers evidence that he had received an above average performance evaluation at ValueOptions five weeks before his termination and two favorable performance evaluations in prior jobs with different employers, (PSOF ¶ 8), but this evidence does not contradict Defendants' evidence, nor is it relevant to the issues before the Court.

### B.    The Administrative Hearing & Judicial Review

On December 20, 2004, following its investigation, the BBHE issued a Notice of Hearing and Complaint, and scheduled a formal administrative hearing before the Administrative Law Judge ("ALJ") in the Office of Administrative Hearings. (DSOF ¶ 9, Ex. L). Plaintiff had the opportunity to present evidence and examine witnesses, though Plaintiff claims the ALJ "denied" his "legal right to make a legal 'offer of proof' as it relates to evidence." (DSOF ¶ 9; PSOF ¶¶ 9, 10, 11). On May 24, 2005, before the ALJ's decision, Plaintiff filed the current lawsuit in this Court. (Dkt. 1, DSOF Ex. M). On June 9, 2005, the ALJ recommended that Plaintiff's Social Work license be revoked. (DSOF ¶ 10, Ex. M). On August 25, 2005, Plaintiff filed a Complaint for Judicial Review of Administrative Decision in the Maricopa County Superior Court ("Superior Court"), No. LC2005-000641-001 DT. (DSOF ¶ 11, Ex. O). On July 17, 2006, the Superior Court issued its decision upholding BBHE's decision to revoke Plaintiff's license. (DSOF ¶ 11, Ex. P). The Superior

---

[3] Plaintiff's evidence offered to dispute this fact establishes only that Plaintiff was terminated without four weeks notice, as required by his employment contract, not that he was not "terminated." (DSOF ¶ 7).

1 Court specifically held that (1) "The [BBHE's] decision is supported by substantial evidence
2 and is not contrary to law, arbitrary, capricious, or an abuse of discretion[;]" (2) "The
3 [BBHE's] decision was not the result of illegal bias or prejudice[;]" and (3) "Plaintiff was
4 afforded due process of law in the proceedings." (DSOF ¶ 11, Ex. P).

## II. Plaintiff's Motion to Strike & Objections to Defendants' Evidence

6 Plaintiff filed objections to Defendants' evidence as well as two motions to strike
7 portions of the affidavits of Debra Rinaudo, Mary M. Black, and Tim Martinson. (Dkts. 77,
8 78). Plaintiff is correct that only admissible evidence offered by the moving party in support
9 of a motion for summary judgment may be considered. See Fed. R. Civ. P. 56(e); Orr v.
10 Bank of Am., 285 F.3d 764, 773 (9th Cir. 2002). Nonetheless, at the summary judgment
11 stage, the Court does not focus on the admissibility of the form of evidence. Instead, the
12 Court focuses on the admissibility of the content of the evidence and whether it could be
13 presented in any form at trial. See Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003).

14 Plaintiff first moves to strike portions of Defendant Rinaudo's affidavit on the basis
15 that Defendant Rinaudo makes "inadmissible statements," does not have "personal
16 knowledge" to make an affidavit, and relies on hearsay. Plaintiff's argument that Defendant
17 Rinaudo lacks personal knowledge is based upon the fact that she conducted interviews with
18 agency heads and some of Plaintiff's peers as part of her investigation and created
19 investigative reports with summaries of her findings from those interviews. Defendant
20 Rinaudo later testified regarding the results of the investigation at Plaintiff's administrative
21 hearing. Defendant Rinaudo has sufficient personal knowledge to testify on the matters in
22 her affidavit. See Fed. R. Evid. 602. Plaintiff's objection really goes to whether the
23 underlying facts upon which Rinaudo bases her conclusions are inadmissible hearsay.
24 Plaintiff's hearsay objections to the documents and statements relied upon by Defendant
25 Rinaudo are unavailing. Under Arizona's Administrative Hearing Procedures, "[a] hearing
26 may be conducted in an informal manner and without adherence to the rules of evidence
27 required in judicial proceedings." A.R.S. § 41-1092.07(F)(1). Moreover, at trial in this
28 matter, these statements and documents could be admitted in some admissible form, whether

- 4 -

1  for a nonhearsay purpose, or via one of the numerous exceptions to the hearsay rule. See,
2  e.g., Fed. R. Evid. 803(5) (written statements can be entered into evidence as a recorded
3  recollection); Fed. R. Evid. 803(8) (the "public records and reports" exception admits
4  "factual findings resulting from an investigation made pursuant to authority granted by law,
5  unless the sources of information or other circumstances indicate lack of trustworthiness.").
6  Thus, the Court will not strike the affidavit of Defendant Rinaudo.

7  Plaintiff next moves to strike portions of the Mary M. Black and Tim Martinson
8  affidavits. Defendants point out that Plaintiff filed this very same motion in Robinson v.
9  Black Family & Child Services, et. al, Case No. 03-1534-PHX-RCB. The Court hereby
10 incorporates the opinion in that prior case by reference, and adopts the holding therein. See
11 Dkt. 103, Case No. 03-1534-PHX-RCB. Plaintiff's motion to strike these affidavits is denied
12 in its entirety for the reasons discussed by the Court in Plaintiff's prior case against Black
13 Family & Child Services, all which apply equally here.

14 **III.    Summary Judgment Standard**

15 Summary judgment is appropriate "when there is no genuine issue of material fact"
16 such that "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.
17 Under summary judgment practice, the moving party bears the initial responsibility of
18 presenting the basis for its motion and identifying those portions of the record, together with
19 affidavits, that it believes demonstrate the absence of a genuine issue of material fact.
20 Celotex, 477 U.S. at 323; Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (*en
21 banc*). In assessing whether a party has met its burden, the court views the evidence in the
22 light most favorable to the nonmoving party. Allen v. City of Los Angeles, 66 F.3d 1052,
23 1056 (9th Cir. 1995). All reasonable inferences are drawn in favor of the nonmovant.
24 Gibson v. County of Washoe, 290 F.3d 1175, 1180 (9th Cir. 2002). If the moving party
25 meets its burden with a properly supported motion, the burden then shifts to the opposing
26 party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P.
27 56(e); Auvil v. CBS "60 Minutes", 67 F.3d 816, 819 (9th Cir. 1995); see Anderson v. Liberty
28 Lobby, Inc., 477 U.S. 242, 248 (1986).

1  If the moving party presents evidence that, taken by itself, would establish the right
2 to a directed verdict at trial, the motion for summary judgment must be granted in the
3 absence of any significant probative evidence tending to support the opposing party's theory
4 of the case. First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 290 (1968); THI-Hawaii, Inc.
5 v. First Commerce Fin. Corp., 627 F.2d 991, 993-94 (9th Cir. 1980). Conclusory allegations,
6 unsupported by factual material, are insufficient to defeat a motion for summary judgment.
7 Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by
8 affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a
9 genuine issue for trial. Anderson, 477 U.S. at 249; Devereaux, 263 F.3d at 1076. A factual
10 dispute is genuine if the evidence is such that a rational trier of fact could resolve the dispute
11 in favor of the nonmoving party.    Anderson, 477 U.S. at 248.  A fact is material if
12 determination of the issue might affect the outcome of the case under the governing
13 substantive law. Anderson, 477 U.S. at 248.  Thus, a party opposing a motion for summary
14 judgment cannot rest upon bare allegations or denials in the pleadings, but must set forth
15 specific facts demonstrating a genuine issue for trial.  Anderson, 477 U.S. at 250.  If the
16 nonmoving party's evidence is merely colorable or not significantly probative, a court may
17 grant summary judgment.  See Anderson, 477 U.S. at 249; see also Cal. Architectural Bldg.
18 Prods., Inc. v. Franciscan Ceramics, 818 F.2d 1466, 1468 (9th Cir. 1987).

19 **IV.    The *Rooker-Feldman* Doctrine**

20  Defendants first argue that this Court is without jurisdiction because Plaintiff is
21 essentially seeking the review the Superior Court's order in his administrative review action
22 (Maricopa County Superior Court No. LC2005-000641-001 DT).  Defendants rely on the
23 judge-made *Rooker-Feldman* doctrine, which applies when a losing litigant in state court
24 seeks, via a lawsuit in federal district court, the review and reversal of the state court
25 judgment.  See Rooker v. Fidelity Trust, 263 U.S. 413, 415, 44 S. Ct. 149, 68 L. Ed. 362
26 (1923) (state court judgment is effective and conclusive adjudication); District of Columbia
27 Court of Appeals v. Feldman, 460 U.S. 462, 482, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983)
28 (lower federal court has no authority to review final judgment of state court).

1    Defendants, however, fail to address a critical component of *Rooker-Feldman*. The
2 doctrine does not apply if the federal action was filed *before* entry of the state court
3 judgment. See Exxon Mobil Corp. v. Saudi Basic Indus. Corp, 544 U.S. 280, 284, 125 S.Ct.
4 1517, 1521 (2005) (holding that the *Rooker-Feldman* doctrine "is confined to cases of the
5 kind from which the doctrine acquired its name: cases brought by state-court losers
6 complaining of injuries caused by state-court judgments rendered before the district court
7 proceedings commenced and inviting district court review and rejection of those
8 judgments."). Plaintiff filed his complaint in this case on May 24, 2005, and did not file his
9 case in the Maricopa County Superior Court until August 25, 2005. The Superior Court did
10 not render its decision upholding the ALJ's decision until July 17, 2006. (DSOF ¶¶ 10, 11).
11 Thus, the current federal case was filed prior to the state court judgment, rendering the
12 *Rooker-Feldman* doctrine inapplicable.

13 **V.    Res Judicata Effect of Plaintiff's Prior Superior Court Case**

14    Defendants next argue that even if the Court has jurisdiction, res judicata bars
15 Plaintiff's claims. Specifically, Defendants contend that the judgment of the Superior Court
16 has a preclusive effect on Plaintiff's claims in the pending case because he raised, or could
17 have raised these current claims in the Superior Court, and the Superior Court entered a
18 judgment on the merits.

19    It is well-settled "that a federal court must give to a state-court judgment the same
20 preclusive effect as would be given that judgment under the law of the State in which the
21 judgment was rendered." See Hoffman Constr. Co. v. Active Erectors & Installers, Inc., 969
22 F.2d 796, 799 (9th Cir. 1992) (quoting Migra v. Warren City School Dist. Bd. of Educ., 465
23 U.S. 75, 81 (1984)), cert. denied, 61 U.S.L.W. 3581 (U.S. Feb. 22, 1993) (No. 92-869). In
24 Arizona, res judicata will preclude a claim "when a former judgment on the merits was
25 rendered by a court of competent jurisdiction and the matter now in issue between the same
26 parties was, or might have been, determined in the former action." Hall v. Lalli, 194 Ariz.
27 54, 57, 977 P.2d 776, 779 (Ariz. 1999) (citation omitted). A valid final judgment is
28 conclusive as to every issue decided and every issue raised by record that could have been

decided. See Heinig v. Hudman, 177 Ariz. 66, 71, 865 P.2d 110, 115 (Ariz. App. 1994). Further, the Ninth Circuit has stated that "a plaintiff cannot reinstitute the same cause, against the same defendants, based on the same facts, by merely changing his legal theory to civil rights violations and crossing from the state to the federal courthouse." See Bailey v. IRS, 188 F.R.D. 346, 353 (D. Ariz. 1998) (citing Johnson v. Dept. of Water and Power of the City of Los Angeles, 450 F.2d 294, 295 (9th Cir. 1971)).

### A.     Plaintiff's Superior Court Case

Plaintiff's Superior Court case involved the same issues and parties[4] as this case. Plaintiff alleged at the Superior Court level that "Executive Director Rinaudo, SWCC and members of the Bd. from the very beginning of this process have consistently failed to provide Plaintiff with substantive and procedural due process." (DSOF ¶ 11, Ex. O; Dkt. 14). He further alleged that there was "not substantial evidence to support the findings of [the BBHE] or to support [its] decision" and that the decision was "arbitrary, irrational and capricious...." (DSOF ¶ 11, Ex. O). The Superior Court's written opinion framed the issues presented as:

1.   Was the [BBHE's] decision supported by substantial evidence?

2.   Was the [BBHE's] action contrary to law, arbitrary, capricious, or an abuse of discretion?

3.   Was the [BBHE's] decision the result of illegal bias or prejudice?

---

[4] Plaintiff's Superior Court case was brought against Debra Rinaudo, Kathleen Philips, Roberta Gastinrau, and Social Work Credentialing Committee of the State of Arizona Board of Behavioral Health Examiners. (DSOF ¶ 11, Ex. O). The current case was brought against these same parties. The current case also names, individually, various members of the BBHE and SWCC: Michael Salazzar, Cedric Davis, Steve Legendre, Jose Herrera, Sharon Del Worley, Dan Wright, Laura Waterman, Traci Sawyer-Sinkbeil, John Gutierrez, Jose Herrera, Ruth Lee, Teresa Menchaca, Kathleen Philips. (Dkt. 14). Defendants Salazzar, Gastinrau, and the Social Work Credentialing Committee are no longer Defendants. (See Docket). While Plaintiff has named individual members of the SWCC in his federal case, his Superior Court case included the entire SWCC, though individual members were not named. For purposes of analyzing the issues here, the actions of the committee are the same as the actions of the committee members acting in their roles on the committee.

- 8 -

1                  4.     Was Plaintiff afforded due process of law?

(DSOF ¶ 11, Ex. P). The Superior Court went on to analyze each of these issues under the controlling case law and statutory framework, answering each question presented. (DSOF ¶ 11, Ex. P).

With regard to Plaintiff's claim that he was denied due process, the Superior Court noted that "[a] review of the record shows that Plaintiff was given an opportunity to present evidence regarding all of these issues to the Administrative Law Judge." (DSOF ¶ 11, Ex. P). Further, the Superior Court found that "Plaintiff was afforded a multiple-day formal administrative hearing before an Administrative Law Judge in an independent state agency, the Office of Administrative Hearings. Plaintiff was given notice of the hearing and received all of the documents the State anticipated offering into evidence prior to the hearing." (DSOF ¶ 11, Ex. P). The Superior Court considered Plaintiff's arguments and determined that "[t]here [was] no due process violation presented by the facts." (DSOF ¶ 11, Ex. P).

The Superior Court also considered Plaintiff's claim that the BBHE's decision was the result of illegal bias or prejudice. Reviewing the record, the Superior Court found that Plaintiff had "provide[d] no support for this claim other than the fact that he was unsuccessful in the hearing." (DSOF ¶ 11, Ex. P). Thus, the Superior Court held that the [BBHE's] decision was not the result of illegal bias or prejudice.

### B.     **Plaintiff's Federal Claims**

Plaintiff alleges civil rights violations pursuant to 42 U.S.C. §§ 1981, 1983, 1985, 2000. (Dkt. 14). Specifically, Plaintiff alleges that he was denied due process of law by the BBHE and that Defendant Rinaudo violated Title VII and other civil rights statutes by allegedly failing to disclose information to the BBHE during the BBHE's investigation. (Dkt. 14). Plaintiff also alleges that Defendants conspired with his former employers to deprive him of his constitutional rights. (Dkt. 14).

The undisputed evidence demonstrates that the Superior Court considered Plaintiff's due process claims and determined that "[t]here [was] no due process violation presented by the facts." (DSOF ¶ 11, Ex. P). Plaintiff cannot "reinstitute the same cause, against the

- 9 -

1  same defendants, based on the same facts, by merely changing his legal theory to civil rights
2  violations and crossing from the state to the federal courthouse." See Bailey, 188 F.R.D. at
3  353, citing Johnson, 450 F.2d at 295. Further, this Court must give the Superior Court's
4  judgment the same preclusive effect the judgment would be given under state law. Because
5  the Superior Court's judgment was "on the merits" and the Superior Court had jurisdiction
6  to decide Plaintiff's claims pursuant to the Administrative Review Act, A.R.S. §§ 12-901,
7  *et seq.*, Plaintiff is barred from relitigating his due process claims here. See Hall v. Lalli, 194
8  Ariz. 54, 57, 977 P.2d 776, 779 (Ariz. 1999) (citation omitted). Thus, Plaintiff's due process
9  claims are precluded.

10  Plaintiff's discrimination claims are also precluded from relitigation by the Superior
11  Court's judgment. The Superior Court found that the BBHE's decision was not the result of
12  illegal bias or prejudice and the Plaintiff had presented no evidence to support his
13  discrimination allegations. While res judicata provides an adequate reason for granting
14  summary judgment on Plaintiff's discrimination claims, the Court will discuss Defendants'
15  other arguments, which provide independent reasons for dismissal of Plaintiff's
16  discrimination claims.

17  **VII.   Plaintiff's Title VII Claim**

18  Defendants contend that Plaintiff's Title VII claim fails as a matter of law because the
19  undisputed evidence demonstrates that he was never an employee of the State of Arizona or
20  any of the defendants. Title VII of the Civil Rights Act of 1964 forbids employment
21  discrimination against "any individual" based on that individual's "race, color, religion, sex,
22  or national origin." Pub. L. 88-352, § 704, 78 Stat. 257, as amended, 42 U.S.C.§ 2000e-2.
23  Burlington Northern & Santa Fe Ry. v. White, 126 S.Ct. 2405, 2408 (2006). It is well-settled
24  that Title VII, by its own terms, does not apply to professional licensing boards like the
25  BBHE.   See e.g. Haddock v Board of Dental Examiners, 777 F.2d 462 (9th Cir. 1985)
26  (Board of Dental Examiners is neither "employer," "employment agency," nor "labor
27  organization" within meaning of the Act); Woodard v Virginia Bd. of Bar Examiners, 420
28  F. Supp. 211 (E.D. Va. 1976), affirmed by 598 F2d 1345 (4th Cir. 1979) (Court could not

- 10 -

1 consider claims under 42 U.S.C. § 2000e-2 that Virginia state bar examination discriminated
2 against blacks); Tyler v. Vickery, 517 F.2d 1089, 1096 (5th Cir. 1975), cert. denied, 426 U.S.
3 940, 96 S.Ct. 2660 (1976) (The Georgia Board of Bar Examiners is not an employer within
4 the meaning of the Act); National Org'n for Women v. Waterfront Com'n, 468 F. Supp. 317,
5 320 (S.D.N.Y. 1979) (licensing agency not an employer).

6       Title VII defines "employer" as "a person engaged in an industry affecting commerce
7 who has fifteen or more employees for each working day in each of twenty or more calendar
8 weeks in the current or preceding calendar year, and any agent of such a person...."  42
9 U.S.C. § 2000e(b).  A simple reading of this definition demonstrates that it is not intended
10 to apply to the kind of licensing activity in which the BBHE engages.  In its licensing role,
11 the BBHE neither pays wages nor engages the services of applicants, and it is undisputed that
12 there was no employer-employee relationship between Plaintiff and Defendants.  Thus,
13 Plaintiff cannot maintain a Title VII claim against the BBHE, SWCC, or its members.  See
14 Haddock, 777 F.2d at 464.

15 **VIII. Plaintiff's Claim Under 42 U.S.C. § 1981**

16       The use of 42 U.S.C. § 1981 ("§ 1981"), unlike Title VII, is not limited to situations
17 involving an employer-employee relationship.  A Plaintiff may pursue § 1981 claims against
18 professional licensing boards.  See, e.g., Morrison v American Bd. of Psychiatry &
19 Neurology, 908 F. Supp. 582 (N.D. Ill. 1996) (psychiatrist's action under § 1981 against
20 private psychiatry and neurology certification board, alleging racially discriminatory denial
21 of certification, was not dismissed, where plaintiff alleged that without certification she will
22 be unable to contract with medical facilities that require board's certification and that she has
23 been deprived of salary increase in present job); Takahashi v Fish & Game Com., 334 U.S.
24 410, 68 S.Ct 1138 (1948) (California may not constitutionally use federally-created racial
25 ineligibility for citizenship as basis for barring Japanese alien from earning his living as
26 commercial fisherman); Whitfield v Illinois Board of Law Examiners, 504 F.2d 474 (7th Cir.
27 1974) (bar examination challenged as unconstitutional); Finch v Mississippi State Medical
28

1  Asso., 585 F.2d 765. (5th Cir. 1978) (state medical association sued for racial
2  discrimination).

3  Defendants contend that Plaintiff has not provided any evidence that BBHE
4  discriminated against him and bases his claims solely on conclusory allegations of race
5  discrimination.  The Court agrees.  None of the facts that Plaintiff points to in the record
6  support his allegation that he was discriminated against.  Plaintiff cannot rest on bare
7  allegations alone in opposing a motion for summary judgment, but must set forth specific
8  facts demonstrating a genuine issue for trial.  See Anderson, 477 U.S. at 250.  Plaintiff's
9  response relies upon irrelevant facts and comments primarily related to the other court
10 proceedings in this matter.  Thus, his § 1981 claim fails as a matter of law.

11 **IX.    Plaintiff's Claim under 42 U.S.C. § 1983**

12 Defendants also contend that they are entitled to qualified immunity on Plaintiff's 42
13 U.S.C. § 1983 ("§ 1983") claim because Plaintiff cannot show a deprivation of his
14 constitutional rights.  In analyzing a claim of qualified immunity, the Court first inquires
15 whether, "taken in the light most favorable to the party asserting the injury, that party has
16 established a violation of a federal right."  Preschooler II v. Clark County Sch. Bd. of Trs.,
17 479 F.3d 1175, 1179-1180 (9th Cir. 2007), citing Saucier v. Katz, 533 U.S. 194, 201, 121
18 S.Ct. 2151 (2001).  If this threshold inquiry is satisfied, the Court will consider whether the
19 Defendants' conduct violated "clearly established statutory or constitutional rights of which
20 a reasonable person would have known."  Preschooler II, 479 F.3d at 1179-1180, citing Hope
21 v. Pelzer, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002).

22 Plaintiff's § 1983 claim is not well-defined.  To the extent any part of Plaintiff's claim
23 is based upon a violation of his due process rights, that claim is precluded by the Superior
24 Court judgment.  See supra.  Defendants interpret Plaintiff's § 1983 claim as being brought
25 under and equal protection theory.  The Court is not convinced that such a claim is even
26 raised in Plaintiff's pleadings.  Nonetheless, if such a claim does exist, Plaintiff would have
27 to show that Defendants, acting under color of state law, discriminated against him as a
28 member of an identifiable class and that the discrimination was intentional.  Flores v. Morgan

Hill Unified Sch. Dist., 324 F.3d 1130, 1134 (9th Cir. 2003). Plaintiff has not pointed to any evidence in the record that would suggest intentional discrimination. As discussed above with respect to Plaintiff's § 1981 claim, Plaintiff cannot rest on bare allegations of discrimination to survive a motion for summary judgment. Viewing all the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to establish a violation of a federal right. Preschooler II., 479 F.3d at 1179-1180. Thus, his § 1983 claim fails as a matter of law.

**X.    Plaintiff's 42 U.S.C. § 1985 Conspiracy Claim**

Defendants finally contend that Plaintiff has not put forth any facts supporting his 42 U.S.C. § 1985 ("§ 1985") claim. Plaintiff alleges that Defendants conspired with his former employers to deprive him of his constitutional rights. (Dkt.14). To prove his claim, Plaintiff must show: (1) a conspiracy; (2) for the purposes of depriving him of the equal protection of the laws; (3) an act in furtherance of the conspiracy; (4) whereby Plaintiff was either injured in his person or property or deprived of a right or privilege of a United States citizen. See Mustafa v. Clark County Sch. Dist., 157 F.3d 1169, 1181 (9th Cir. 1998). Plaintiff has failed to present evidence to satisfy any one of these elements, and his allegations alone are not sufficient to defeat a motion for summary judgment. See Anderson, 477 U.S. at 249.

//

//

//

Accordingly,

**IT IS ORDERED THAT:**

1. Plaintiff's Motion to Strike Portions of Defendant Rinaudo's Affidavits (Dkt. 77) is **denied**.
2. Plaintiff's Motion to Strike Portions of Mary M. Black Tim Martinson-Affidavits For Summary Judgment (Dkt. 78) is **denied**.
3. Defendants' Motion for Summary Judgment (Dkts. 67, 68) is **granted**.

- 13 -

4. The Clerk shall enter a judgment in favor of Defendants and against Plaintiff.

DATED this 5th day of September, 2007.

_Earl H. Carroll_
Earl H. Carroll
United States District Judge

- 14 -